UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 2 6 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-622-GWU

JERRY W. BLEVINS,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
If yes, the claimant is not disabled.  If no, proceed to Step 2.
See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
or mental impairment(s)? If yes, proceed to Step 3.  If no, the
claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
impairment(s) significantly limiting the claimant's physical or
mental ability to do basic work activities?  If yes, proceed to
Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.   Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Blevins

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Blevins

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Blevins

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jerry W. Blevins, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic obstructive pulmonary disease, hypertension, hyperlipidemia, anxiety, depression, a history of low back pain, a history of knee pain, and right elbow pain (status post trauma). (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Blevins retained the residual functional capacity as of his Date Last Insured (DLI) to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-2). The Appeals Council declined to review, and this action followed.

The plaintiff had filed a prior application for DIB in September, 1996, which, after several administrative appeals and a remand from this Court, was eventually denied by an ALJ in a decision dated January 26, 2001. (Tr. 35-43). The administrative decision was upheld in another decision by this Court on October 31, 2002. <u>Blevins v. Barnhart</u>, London Civil Action No.01-446 (E.D. Ky.). The ALJ did not reopen the prior application, and since the plaintiff's DLI is December 31, 2001, the relevant period for the current application is January 26th to December 31, 2001.

The ALJ in the present case adopted the residual functional capacity from the January 26, 2001 administrative decision, which limited the plaintiff to light level

7

exertion, and also imposed the following non-exertional impairments. (Tr. 21). The plaintiff: (1) would require a sit/stand option; (2) could perform no repetitive pushing, pulling, or reaching with the right arm; (3) could do no repetitive bending, turning, or twisting; (4) could do no climbing or squatting; (5) could not work around smoke, dust, fumes, gases, or temperature/humidity extremes; (6) could not perform work requiring greater than a 2.3 grade level in arithmetic and a 3.9 grade level in reading; and (7) would have a "seriously limited but not precluded" ability to deal with the public, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration.  (Tr. 21-2, 36).  The ALJ also adopted testimony from a VE at the previous hearing that a person of the plaintiff's age, education, and work experience with the above restrictions could perform several different jobs existing in the state and national economies, and also adopted the VE's testimony regarding the number of such jobs.  (Tr. 23, 42).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

In his current application, Mr. Blevins alleged disability due to nerves, depression, breathing problems, heart problems, high blood pressure, a lame right arm, arthritis, and no ability to lift or bend.  (Tr. 97).

Medical evidence from the relevant period is limited, but includes office notes from Dr. S. Eskander, a psychiatrist at the Comprehensive Care Center (CCC), where the plaintiff was seen early in 2001 and given a diagnosis of dysthymia and

Blevins

a Global Assessment of Functioning (GAF) score of 60. (Tr. 275). A GAF score of 60 reflects moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p.34. Dr. Eskander prescribed Elavil, which the plaintiff reported helped his sleep and during 2001 prescribed trials of several different antidepressants, as well as Viagra. (Tr. 264-9). It was noted, however, that Mr. Blevins was "unmotivated to seek any kind of employment." (Tr. 264). By October 3, 2002, the plaintiff's diagnosis was still dysthymia, but his GAF was listed as 65. (Tr. 258). A GAF of 65 reflects only mild symptoms per the DSM-IV-TR. In March, 2003, well after the DLI, a new psychiatrist, Dr. Raza, indicated that the plaintiff had a decrease in anxiety, a decrease in depression, was feeling better, and his appetite and sleep were "fine." (Tr. 249). In July, he indicated a "favorable response to medications," and a decrease in anxiety and depression. (Tr. 170). Almost a year later, on April 26, 2004, Dr. Raza wrote a letter stating that the plaintiff had a history of dysthymia and panic disorder with agoraphobia, which were in "partial remission," but he had difficulty going out, avoided crowds, people, and family, and was "scared and isolates himself." (Tr. 385).

State agency psychologists reviewed much of the available evidence and opined in 2003 that, as of the DLI, the plaintiff would be no more than "moderately limited" in his ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods. (Tr. 319-25).

9

Therefore, the evidence from the period prior to the DLI does not indicate that the plaintiff would have greater restrictions than in the previous decision. Even if Dr. Raza's 2004 letter indicated a worsening in condition, it was far after the period in which the plaintiff was eligible for DIB.

Records from Dr. Sharon Colton show that she began treating the plaintiff in March, 2001 for complaints of hypertension and chronic obstructive pulmonary disease. (Tr. 300). His physical examination was remarkable only for occasional wheezes in the lungs. (Id.). The plaintiff was also complaining of occasional chest pain, and was given Vioxx in addition to medications for blood pressure and breathing. (Id.). Subsequently, he was also given medication for high cholesterol. (Tr. 299). In November, 2001, the plaintiff's blood pressure was 124/80, and he stated that the medication was working well and he had less chest pain. (Tr. 296). No functional restrictions are given, and state agency physicians who reviewed the evidence opined that Mr. Blevins had a residual functional capacity consistent with the ALJ's hypothetical question as of the DLI.(Tr. 306-17).

Subsequently, in July, 2003, the plaintiff was given a detailed physical examination by a physician's assistant in Dr. Colton's office and was found to have a normal funduscopic examination, normal heart sounds, a clear chest, normal gait and station, no decreased range of motion or tenderness, equal reflexes, normal sensation, and a normal mood and affect. (Tr. 175-7). It was opined that, while the plaintiff's hypertension, chronic obstructive pulmonary disease, and arthritis were all

10

chronic problems, they appeared to be well-controlled with current medications, as was the cholesterol level. (Tr. 178-9). Because of the complaints of chest pain, Dr. Colton scheduled a stress test in November, 2003, and this was noted to be normal throughout, with good exercise tolerance. (Tr. 172-3). Dr. Colton did complete a functional capacity assessment dated April 8, 2004 limiting the plaintiff to less than full-time work, in addition to having other restrictions. (Tr. 386-7). The ALJ rejected this assessment as being unsupported by objective evidence and, in any case, it does not specifically "relate back" to the period before the DLI.

The plaintiff was also treated by a second family practitioner, Dr. Sharon Fogleman, starting in September, 2002. (Tr. 152). Dr. Fogleman wrote a letter in March, 2004, indicating that the plaintiff had been seen for hypertension, hyperlipidemia, "chronic anxious depression," chronic low back pain, knee pain, and chronic right elbow pain status post trauma. (Tr.146, 383). In her opinion, he was capable of lifting 25 pounds occasionally and 15 pounds regularly, needed to avoid repetitive bending, lifting, and twisting of the back, crouching, and kneeling, and should do no more than 10 pounds lifting with the right arm. (Id.). These restrictions, although once again not related to the period before the DLI, are consistent with the ALJ's physical factors.

Counsel for the plaintiff does not clearly appear to recognize the issue of the DLI in her brief, and cites a large amount of evidence from the prior, final application, as well as evidence from after the DLI, but she does make a possibly relevant

Blevins

argument that Mr. Blevins was 54 years old and "closely approaching advanced age" at the time of the decision, under the Commissioner's Medical-Vocational guidelines (the "grids"). However, Mr. Blevins was born on July 26, 1951 (Tr. 67) making him only 50 years old at the time of the DLI, rather than 54. The prior ALJ had made a finding that, although his literacy was limited, Mr. Blevins was not unable to read and write and also had some skilled and semiskilled work experience. (Tr. 40). Under the circumstances, the correct grid rule would be 202.11, which would direct a conclusion of "not disabled." Accordingly, any implication that the plaintiff should have been found disabled on the basis of the grids is without merit.

The decision will be affirmed.

This the ___26___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE